23CA1867 Peo v Al-Jihad 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1867
Jefferson County District Court No. 23CR846
Honorable Tamara S. Russell, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Nasser Ismail Al-Jihad,

Defendant-Appellee.

---

RULING DISAPPROVED

Division III
Opinion by JUDGE DUNN
Brown, J., concurs
Schock, J., dissents

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Alexis King, District Attorney, Colleen R. Lamb, Senior Appellate Deputy
District Attorney, Golden, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, James S. Hardy, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellee

¶ 1     The People bring this appeal after a jury acquitted defendant, Nasser Ismail Al-Jihad, of felony menacing and obstructing a peace officer.  Among other things, they contend that the district court erred by instructing the jury on self-defense as an affirmative defense to felony menacing.  We agree and therefore disapprove this ruling.

## I.     Background

¶ 2     Al-Jihad lived in an assisted living facility with staff members and several other residents.  On the day of the incident, he became agitated, prompting a staff member to call 911.

¶ 3     When the police arrived, Al-Jihad was in the backyard with a fake gun in his hand.  One of the officers went to a gated fence on the side of the group home and looked through the slats into the backyard.  The officer then opened the gate and "peeked" around the fence, exposing only her head and "upper body-ish."  Al-Jihad pointed the fake gun at her and jumped over the fence.

¶ 4     After Al-Jihad refused to comply with commands to stop, other officers tased and arrested him.  Al-Jihad later told police that he pointed the fake gun toward the officers "not in a term of oh, shoot,

1

but in term of, maybe this will give me time to run away, because I don't know if they're going to tase me."

¶ 5     For his actions, the prosecution charged Al-Jihad with felony menacing and obstructing a peace officer.

¶ 6     Defense counsel asked the district court to instruct the jury on self-defense as an affirmative defense to menacing, arguing that Al-Jihad reasonably believed he was going to be tased by the person who peeked into the backyard.  The prosecution objected, countering that no evidence suggested it was reasonable for Al-Jihad to believe the officer was imminently going to tase him or use physical force against him.  The district court opted to give the instruction, concluding that Al-Jihad's statement that he feared he was going to be tased was "some evidence" to support self-defense.

¶ 7     The jury acquitted Al-Jihad on both charges.

¶ 8     On appeal, the People contend that the district court erred by (1) instructing the jury on self-defense and (2) refusing to instruct the jury on the initial aggressor exception to self-defense.  Because we agree with the People's first contention, we don't reach the second.

## II. Appellate Jurisdiction

¶ 9 At the outset, we address Al-Jihad's argument that we should dismiss this appeal because (1) it does not present a question of law, as required by section 16-12-102, C.R.S. 2025; and (2) it was rendered moot by the jury verdict acquitting him of the menacing charge.

¶ 10 "The prosecution may appeal any decision of a court in a criminal case upon any question of law." § 16-12-102(1); *see also People v. Gabriesheski*, 262 P.3d 653, 656 (Colo. 2011) (noting this "uncommonly broad authority to appeal"). Whether the evidence was sufficient to support a self-defense instruction is a question of law. *See Pearson v. People*, 2022 CO 4, ¶ 16 (whether a defendant has met their burden to present an affirmative defense "is a question of law").[1]

---

[1] Al-Jihad characterizes the People's appeal as challenging the district court's "weighing of the evidence." But it was the jury who weighed the evidence. *See People v. Moore*, 2021 CO 26, ¶ 48 ("[W]hether [the defendant] acted reasonably remains a question of fact for the jury to resolve."). The question for the district court, and the one raised on appeal, was whether the evidence was sufficient to support the self-defense instruction.

¶ 11    Where section 16-12-102(1) authorizes an appeal, we must "issue a written decision answering the issues in the case and will not dismiss the appeal on the ground that a decision will have no precedential value." C.A.R. 4(b)(6)(A). This is true even though, after an acquittal, our review is "limited to approval or disapproval of the district court's order." *People v. Gentry*, 738 P.2d 1188, 1188 n.2 (Colo. 1987).

¶ 12    While we question the People's decision to expend limited prosecutorial and judicial resources on this appeal — which has no impact on either this case or any future case — we accept that the People are "authorized by" section 16-12-102(1) to appeal the legal question of whether sufficient evidence supported the self-defense instruction. C.A.R. 4(b)(6)(A). We also accept that we must "issue a written decision answering" that question, despite the fact that our opinion will have no precedential or practical effect. *Id.*

¶ 13    Quoting *People v. Tharp*, 746 P.2d 1337, 1339 (Colo. 1987), Al-Jihad contends that section 16-12-102 should be reserved for cases involving "egregious errors" by the district court and that it should not be used for review of "a unique set of circumstances [that] would shed no light on broader legal issues." Much as we would

4

like to agree, *Tharp* was decided before C.A.R. 4(b)(6) made clear that we must resolve any appeal by the People raising a question of law. *See People v. Jackson*, 972 P.2d 698, 700-01 (Colo. App. 1998). *Tharp* no longer supports limitations on a People's appeal beyond those in section 16-12-102.

¶ 14    For similar reasons, while we agree with Al-Jihad that any opinion we issue has no practical impact, we disagree that we may dismiss the appeal as moot; we must issue an opinion nonetheless. *See People v. Wilburn*, 2013 COA 135, ¶¶ 8-9 (rejecting argument that appeal was moot because the charges had been dismissed and could not be reinstated); *People v. Richardson*, 58 P.3d 1039, 1048 (Colo. App. 2002) (holding that the People's lack of remedy did not "require or permit dismissal of the appeal").[2]

¶ 15    We therefore conclude that we have jurisdiction under section 16-12-102 and may not dismiss the appeal.

---

[2] To the extent Al-Jihad asserts that the acquittal means the jury necessarily found there was evidence of self-defense, we decline to speculate as to the basis of the jury verdict. *See People v. Delgado*, 2019 CO 82, ¶ 26 (noting that an acquittal may have "various explanations"). In any event, the district court — not the jury — must determine whether sufficient evidence supports a self-defense instruction.

### III.    Self-Defense Instruction

¶ 16    The People contend that the district court erred by instructing the jury on self-defense because there was no evidence that Al-Jihad's stated belief in the imminent use of unlawful physical force against him was objectively reasonable.  We agree.

¶ 17    A defendant is entitled to a self-defense instruction so long as there's "some credible evidence" to support it.  *Pearson,* ¶ 16 (quoting § 18-1-407(1), C.R.S. 2025).  While this threshold is low, "it is not negligible."  *People v. Opana,* 2017 CO 56, ¶ 17.  To determine whether this threshold was satisfied, "we consider the evidence in the light most favorable to the defendant."  *Cassels v. People*, 92 P.3d 951, 955 (Colo. 2004); *see also Galvan v. People*, 2020 CO 82, ¶ 33 (viewing the evidence "in the light most favorable to giving" the instruction).

¶ 18    We review de novo whether there was sufficient evidence to support a self-defense instruction.  *Pearson,* ¶ 16; *Castillo v. People*, 2018 CO 62, ¶ 32.

¶ 19    As relevant here, a person's use of self-defense is justified only if he "*reasonably* believes" another person is using or about to use "unlawful physical force" against him.  § 18-1-704(1), C.R.S. 2025

(emphasis added). This reasonable belief standard is an objective one; while it accounts for the defendant's state of mind, it "ultimately requires that a reasonable person would have believed and acted as the defendant did." *People v. Martinez*, 2022 COA 111, ¶ 36, *aff'd*, 2024 CO 48. A "reasonable person" means "an objectively reasonable individual and not a subjectively reasonable one possessing the individual defendant's personality traits or defects." *Id.* (citation omitted).

¶ 20 The evidence at trial showed only that an officer peered through the fence slats into a shared backyard of the group home and then opened the gate, leaning her head and upper body around the fence. But the officer was over twenty feet from Al-Jihad and didn't enter the yard or approach him. She didn't display any weapons, didn't yell at or threaten Al-Jihad, and wasn't aggressive. So even if Al-Jihad subjectively believed that he was in imminent danger from someone peeking into the backyard in the middle of the day, no evidence was presented to demonstrate that this belief was objectively reasonable. And while Al-Jihad later told police that he pointed the fake gun at the officer because he "[didn't] know if they're going to tase me," nothing the officer did would lead a

7

reasonable person to believe that the officer was about to use any physical force against him. Al-Jihad's statement again shows, at most, that he subjectively believed the officer might tase him.

¶ 21     Even so, Al-Jihad insists that the self-defense instruction was warranted because the court was required to "apprise the jury of the law of self-defense *from the standpoint of the defendant.*" *Idrogo v. People*, 818 P.2d 752, 754 (Colo. 1991) (emphasis added). But in *Idrogo*, it was undisputed that, given the evidence at trial, the defendant was entitled to a self-defense instruction. *Id.* Instead, the issue there was whether the jury should have been instructed on the defendant's specific theory that he had no duty to retreat before using deadly force to defend himself. *Id.* at 754-57. Thus, nothing in *Idrogo* eliminated the requirement that a defendant's perceived need to use self-defense must be objectively reasonable. *See* § 18-1-704(1); *Martinez*, ¶ 36.

¶ 22     Because there was no evidence that the officer was about to use unlawful physical force against Al-Jihad, the district court should not have instructed the jury on self-defense. *Cf. People v. Jones*, 2023 COA 104, ¶¶ 31-34 (upholding the district court's refusal to instruct on self-defense because "there was no evidence

8

that the victim took any actions that would make it appear that he was about to use physical force against [the defendant]").

¶ 23     That said, because — as the People argue, and we agree — no evidence warranted the self-defense instruction, it would presumably be an easy task to debunk the defense at trial.  So even if the instruction shouldn't have been given, we are unpersuaded that it substantially impacted the trial.

¶ 24     We therefore disapprove the district court's ruling, albeit reluctantly.

## IV.   Disposition

¶ 25     We disapprove the district court's ruling.

JUDGE BROWN concurs.

JUDGE SCHOCK dissents.

JUDGE SCHOCK, dissenting.

¶ 26    In this appeal, the People ask us to review the district court's determination that there was some credible evidence to support a self-defense instruction in this case.  I join the majority in questioning the wisdom of the People's "decision to expend limited prosecutorial and judicial resources" to appeal such an inherently case-specific determination.  *Supra* ¶ 12.  As I explain below, I also question the premise that we *must* decide this appeal.  But even assuming that we must, I would conclude that the district court did not err by giving the self-defense instruction (and not giving the initial aggressor instruction).  I therefore respectfully dissent.

I.    Propriety of Appeal

¶ 27    As a threshold matter, I am less sure than the majority that section 16-12-102(1), C.R.S. 2025, and C.A.R. 4(b)(6)(A) compel us to decide this appeal, which we agree will have no practical effect.

¶ 28    First, I am not fully convinced that the claimed error — the *giving* of a self-defense instruction to which the defendant was not entitled — presents a "pure question of law under section 16-12-102(1)."  *People v. George*, 2017 COA 75, ¶ 26; *see also People v. Martinez*, 22 P.3d 915, 919 (Colo. 2001) (explaining that

10

prosecutorial appeals under section 16-12-102(1) are "strictly limited" to questions of law (citation omitted)). When a defendant presents some credible evidence of self-defense, disproving self-defense is an element of the offense. *Pearson v. People*, 2022 CO 4, ¶ 18. Thus, the *denial* of a self-defense instruction to which the defendant is entitled violates the defendant's constitutional rights by impermissibly lowering the prosecution's burden of proof. *Id.* at ¶ 16. That is a question of law, and understandably so. *Id.*

¶ 29    But the same concerns do not arise when a court *gives* a self-defense instruction to which the defendant is not entitled. At worst, such an instruction simply requires the prosecution to prove the inapplicability of a defense that there is no evidence to support anyway. *See id.* at ¶ 18. The People cite no case holding that a court erred — much less as a matter of law — by giving, rather than denying, a self-defense (or other affirmative defense) instruction.

¶ 30    And ordinarily, when a jury instruction accurately states the law, we review the district court's decision to give it for an abuse of

discretion.[1]  *See Garcia v. People*, 2022 CO 6, ¶ 18; *People v.*

*Bielecki*, 964 P.2d 598, 607 (Colo. App. 1998) (holding that district

court did not abuse its discretion by giving legally correct, but

inapplicable, instruction); *cf. People v. Martin*, 561 P.2d 776, 778

(Colo. 1977) (holding that district court had discretion to give theory

of the case instruction that was duplicative of affirmative defense

instruction).  In my view, some measure of discretion is particularly

apt in a close case when the consequences of not giving a self-

defense instruction — the omission of a necessary element — far

exceed those of giving it — the inclusion of an element that will

"presumably be an easy task to debunk."  *Supra* ¶ 23.  Questions

within the district court's discretion are not appealable under

section 16-12-102(1).  *See Hunsaker v. People*, 2015 CO 46, ¶ 29.

¶ 31     Second, even if technically a question of law, the issue on

appeal turns entirely on the district court's "assessment of the

evidence."  *Martinez*, 22 P.3d at 919 (explaining that section 16-12-

---

[1] The People do not dispute that the self-defense instruction was legally correct.  In contrast, when a court fails to give a self-defense instruction to which the defendant is entitled, it inaccurately states the law by omitting an element of the offense and lowering the prosecution's burden of proof.  *Pearson v. People*, 2022 CO 4, ¶ 18.

102(1) "does not give the People a basis upon which to challenge the [district] court's assessment of the evidence"). While I agree with the majority that the district court did not *weigh* the evidence, *supra* ¶ 10 n.1, it did need to assess whether the evidence was *sufficient* to support a finding of objective reasonableness. And the sole issue on appeal is whether that assessment was correct.

¶ 32     Moreover, as the majority points out, the self-defense instruction — if wrongly given — almost certainly had no impact on the trial. *Supra* ¶ 23. Either there was evidence to support it and it was properly given, or there wasn't and the jury presumably rejected it. The purpose of an appeal is to correct errors that injuriously affect a party's rights, not to nitpick every ruling the district court makes along the way.[2] *See People v. Tharp*, 746 P.2d 1337, 1339 (Colo. 1987) ("[A]ppeals by the People should be avoided in cases which do not involve egregious errors by the trial court.").

---

[2] When a defendant appeals, we commonly decline to decide whether the district court erred because any error would be harmless. If we are required to decide every question of law the prosecution chooses to appeal, regardless of its effect on the case, it places the prosecution on better footing than defendants.

¶ 33    The People nevertheless argue, and the majority agrees, that we must decide the appeal because C.A.R. 4(b)(6)(A) says we must. And it is true that divisions of our court have interpreted the rule in this manner. *See, e.g., People v. Victorian*, 165 P.3d 890, 894 (Colo. App. 2007); *People v. Jackson*, 972 P.2d 698, 700 (Colo. App. 1998). But although Rule 4(b)(6)(A) says we "will issue a written decision answering the issues in the case," it only explicitly bars dismissals for lack of precedential value — one of three rationales *Tharp* gave for dismissing a prosecutorial appeal. *See Tharp*, 746 P.2d at 1339; *Martinez*, 22 P.3d at 919 (identifying "three fundamental flaws" discussed in *Tharp*). It is less clear to me that the rule abrogates *Tharp*'s other two rationales — the presence of factual issues and the lack of prejudice — both of which are implicated in this case.

## II.    Self-Defense Instruction

¶ 34    Assuming that we are required to answer the question raised by the People, I would approve the district court's ruling. In my view, the entry of an unknown person into Al-Jihad's backyard is "some credible evidence" to support the conclusion that Al-Jihad's professed fear of imminent unlawful physical force was objectively reasonable. *Pearson*, ¶ 16 (quoting § 18-1-407(1), C.R.S. 2025)).

14

¶ 35     To start, I agree with the People that Al-Jihad's statement that he feared he was going to be tased was not alone sufficient to warrant a self-defense instruction. Self-defense requires "both reasonable belief and actual belief." *Sanchez v. People*, 820 P.2d 1103, 1108 (Colo. 1991). At most, Al-Jihad's statement shows his actual belief that the use of physical force was imminent. Without more, it could not establish the reasonableness of that belief.

¶ 36     But Al-Jihad's statement was not all there was. Viewed in the light most favorable to Al-Jihad, *see People v. Wakefield*, 2018 COA 37, ¶ 8, the evidence indicated that he was in his fenced, residential backyard when an unknown person opened the fence and began entering the yard. Because the person was not fully visible, Al-Jihad did not know the person was a police officer, and the officer did not announce herself. I would hold that these circumstances — an unknown and unidentified intruder surreptitiously entering a residential yard through a closed gate — satisfy the low burden of "some evidence" that Al-Jihad's stated fear of physical force was

reasonable.[3]  It does not matter whether the officer actually intended to use force or whether Al-Jihad's perception of her intent was mistaken.  *Kaufman v. People*, 202 P.3d 542, 551 (Colo. 2009).

¶ 37    In reaching this conclusion, I do not disagree with the premise that a self-defense instruction should not be given when it is "based only on the actual belief of the defendant."  *People v. Jones*, 2023 COA 104, ¶ 1; *see People v. Laurson*, 15 P.3d 791, 795 (Colo. App. 2000).  But in each of the cases the People cite, the circumstances belied any reasonable belief by the defendant that the victim was about to use physical force.  For example, in *Jones* — a case involving *deadly* self-defense — the victim was entering his own home.  *Jones*, ¶ 35.  And in *Laurson*, the victims had "r[u]n from the scene."  15 P.3d at 795.  In contrast, the imminent entry of an unknown person into Al-Jihad's backyard was some evidence tending to make his subjective fear objectively reasonable.

---

[3] The People assert that there was no objectively reasonable basis for Al-Jihad's fear that he would be *tased*.  But self-defense does not require a reasonable belief as to a particular form of physical force.  It simply requires a reasonable belief in the imminent use of unlawful physical force generally.  *See* § 18-1-704(1), C.R.S. 2024.

¶ 38    For the same reasons, I am not swayed by the People's insistence that condoning the self-defense instruction in this case would require such an instruction in all felony menacing cases, or worse, that it would provide a "safe haven" anytime a defendant points a gun at a police officer. Critically, there was evidence in this case that Al-Jihad did not know the person entering his yard was a police officer. Without some objective basis for believing the victim was about to use unlawful physical force, a defendant would not be entitled to a self-defense instruction. *See Jones*, ¶¶ 33-34. But if there is a basis, the defendant should be entitled to an instruction — police officer victim or not. *See Pearson*, ¶ 18.

¶ 39    Because I believe the evidence in this case provides a basis, however minimal, for finding that Al-Jihad reasonably believed he faced imminent unlawful physical force, I would conclude that the district court did not err by giving the self-defense instruction.

### III.    Initial Aggressor Instruction

¶ 40    I would also approve the district court's decision not to instruct the jury on the initial aggressor exception to self-defense because there was no evidence that Al-Jihad used or threatened physical force before the perceived threat to which he responded.

17

¶ 41    When a self-defense instruction is given, an initial aggressor instruction is warranted if there is "some evidence" that the defendant "initiated the physical conflict by using or threatening imminent use of unlawful physical force." *People v. Roberts-Bicking*, 2021 COA 12, ¶¶ 31, 33. In other words, there must be an act of *initial* aggression by the defendant that prompts the physical conflict. *See People v. Manzanares*, 942 P.2d 1235, 1241 (Colo. App. 1996), *abrogated on other grounds by*, *Riley v. People*, 266 P.3d 1089, 1094 (Colo. 2011); *People v. Cline*, 2022 COA 135, ¶ 54 (explaining that an initial aggressor instruction may not be warranted when the charged offense is based on a single act).[4]

¶ 42    In this case, there was only one charged act: Al-Jihad's pointing the fake gun at the officer. If that act was a reasonable response to a perceived threat, then that threat — not Al-Jihad's

---

[4] In *People v. Whiteaker*, 2022 COA 84, ¶ 40, *rev'd on other grounds*, 2024 CO 25, the division rejected the argument that the initial aggressor instruction may be given only if "there is evidence the defendant initiated the physical conflict *prior to* the conduct giving rise to the self-defense claim." But in *Whiteaker*, there was evidence, albeit conflicting, that the defendant "started the physical confrontation," and the issue was whether the exception required "a break" between such initial conduct and the conduct supporting the charged offenses. *Id.* at ¶¶ 37, 41.

18

response — was the initial act. *See People v. Whiteaker*, 2022 COA 84, ¶ 42 (holding that the initial aggressor exception "solely considers the actions of the first party to 'us[e] or threaten[] the imminent use of unlawful physical force'" (citation omitted)), *rev'd on other grounds*, 2024 CO 25. If it was not, then Al-Jihad was not justified in acting in self-defense. There was no basis in the evidence for a finding that Al-Jihad acted to defend himself from a physical conflict that he "initiated." *See Roberts-Bicking*, ¶ 33.

¶ 43 The People argue that Al-Jihad was the initial aggressor because he was the first (and only) one who threatened the use of unlawful physical force. But that is simply another way of saying that he did not act in self-defense. As in *Manzanares*, "[a] finding by the jury that [Al-Jihad] was . . . the 'initial aggressor' would be no more than a rejection of the claim of self-defense." 942 P.2d at 1241. Under these circumstances, I would conclude that the district court did not err by declining to give the instruction.